UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES and L ANN BUTLER, husband and wife, and the marital community composed thereof,

Plaintiffs,

v.

GREAT AMERICAN RV INC., a Washington Corporation; and AMERICAN STATES INSURANCE COMPANY, a Surety Company; and GE MONEY BANK aka GENERAL ELECTRIC COMPANY; and AMERICAN GUARDIAN WARRANTY SERVICES, INC., an Illinois Corporation,

Defendants.

CASE NO. C09-5516 KLS

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF REVOCATION OF ACCEPTANCE AND FOR REIMBURSEMENT

Charles and L. Ann Butler filed a Motion for Partial Summary Judgment requesting this Court find, as a matter of law, that the motorhome, which is the subject of this litigation, was defective when they purchased it and that they should be granted the remedy of recission of the purchase and sale and finance agreements. They also seek relief under the Magnuson Moss

1 Warranty Act. ECF No. 92. The Court notes that under the Uniform Commercial Code, the
2 proper term for use with regard to the Plaintiffs' motion is "revocation of acceptance" rather than
3 "recission". R.C.W. 62-A.2-601. In support of their motion, the Plaintiffs rely on the deposition
4 testimony of Mr. Butler with attached exhibits (ECF No. 65-2) and Coach Repair History which
5 documents were produced by the Defendants in response to a Request for Production of
6 Documents (ECF No. 65-4). In addition, the Plaintiffs filed a companion motion requesting
7 reimbursement should the Court order revocation of acceptance. ECF No. 93.

8 Defendant GE Money Bank opposes the Plaintiff's motion on several grounds. First it
9 asserts that the Court's denial of its prior motion requires denial of the Plaintiffs' motion.
10 Second they take the position that the Plaintiff's have failed to show that the defects in the RV
11 substantially impaired the value of the motorhome to the Butlers. Finally, they assert that the
12 revocation of acceptance was not done in a reasonable period of time.

13 SUMMARY JUDGMENT – ADMISSIBLE EVIDENCE

14 Fed. R. Civ. P. 56(c)(4) **requires** that an affidavit or declaration used to support or
15 oppose a motion "must be made on personal knowledge, set out facts that would be admissible in
16 evidence, and show that the affiant or declarant is competent to testify on the matters stated."

17 In their opposition to the Plaintiffs' motion the defendants submitted the Declaration of
18 Christina Zimmerman. ECF No. 100. Ms. Zimmerman is the Collections Leader for GEMB
19 Lending, Inc. and in that capacity is responsible for overseeing the repossession, resale and debt
20 collection efforts of defendant, GE Money Bank. She goes on to state that the information in her
21 affidavit is based on personal knowledge. That conclusory statement however, is not borne out.
22 Rather, her information appears to be solely based on her review of records which were prepared
23 prior to her involvement in this litigation and which were not prepared by her or under her
24 direction.

1       In addition, Ms. Zimmerman attached to her declaration portions of the Coach Repair
2 History (the entire History is found at ECF No. 65-4) and then, without showing the basis for any
3 personal knowledge, makes statements as to how long it took for a repair to be completed. Her
4 statements are belied by the very information that is specifically included in the Coach Repair
5 History or the testimony of Mr. Butler. The Court, therefore, will not consider any of her
6 statements regarding how long it took to make a window repair and will rather rely on the
7 information on the Coach Repair History or other admissible evidence. For example, Ms.
8 Zimmerman makes the statement that the windshield repair on January 31, 2006 was "less than
9 an hour." There is nothing obvious on Exhibit E to her declaration that supports that statement
10 and she has shown no personal knowledge as to how long the repair took. The document itself
11 shows it was completed in one day and that is what the Court considers, for purposes of this
12 motion, to be the time required. Also, Ms. Zimmerman asserts that the windshield repair that
13 occurred in December 2008 took two days. However, the document she relies on (Exhibit G to
14 her deposition) shows that the repair for the windshield started on December 9, 2008 and ended
15 December 24, 2008 and further shows that the motorhome was turned in to the repair facility on
16 December 3, 2008 and repairs were not completed until January 9, 2009. Ms. Zimmerman has
17 shown no basis for any personal knowledge to conclude that the repair took two days and the
18 Court will not consider that statement.
19       Finally, Ms. Zimmerman also attaches to her Declaration a report dated August 26, 2010
20 which is entitled "Disclosure of Expert Testimony by Defendant, GE Money Bank." ECF No.
21 100. This Disclosure is not in declaration or affidavit form and Ms. Zimmerman is not an expert
22 such that she can rely on an unsworn document to reach conclusions regarding what was or was
23 not done to the motorhome. Therefore, the Court will not consider the Disclosure or its contents
24

nor will it consider any statement of Ms. Zimmerman in Paragraph 4 of her Declaration beyond the first sentence.

In addition, the Court will not consider any statement of Ms. Zimmerman which purports to offer an opinion as to why the windshield had to be replaced. She clearly has no personal knowledge of that and her information is only based on her review of records which were prepared by others and, in some instances, it is not even clear to the Court what she bases her information on. For instance, in Paragraph 10 she states that the repair of the windshield in December 2008 was "due to the fourth windshield being improperly installed back in the summer of 2006." Nothing on Exhibit G makes that statement and clearly Ms. Zimmerman was not present in 2008 when the repair was done nor has she provided any facts to support a conclusion that she has personal knowledge to support that statement. For purposes of this motion, the Court concludes that Ms. Zimmerman does not have admissible personal knowledge regarding the reason why a windshield had to be replaced.

Finally, Ms. Zimmerman appears to have become involved in this case sometime after the motorhome was returned to Great American RV. She makes the assertion that "at no time prior to July 1, 2009 was GEMB ever informed by anyone, including the plaintiffs themselves, of any complaint plaintiffs had with the condition of the RV, any defect associated with the RV or the need to address any item of routine maintenance associated with the RV." She provides no details as to how she has firsthand knowledge regarding the truth of what she asserts and the Court will not consider that statement.

In summary, the Declaration of Christina Zimmerman provides little new information for the Court to consider.

The Court also notes that the Plaintiffs relied on allegations in their Complaint. ECF No. 48. This Complaint is actually an amended complaint but it is not so designated on the

1  pleadings.  This amended Complaint is signed only by Plaintiffs' counsel, Robert Mitchell, and it
2  is thus not a verified complaint and cannot be relied on to support facts in support of the
3  Plaintiffs motion.  To the extent the Plaintiffs rely on allegations in the amended Complaint,
4  those allegations will not be considered by this Court for purposes of this motion.

5                                            LEGAL STANDARD

6         Summary judgment is proper where "the pleadings, depositions, answers to
7  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
8  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
9  of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 I.S. 242, 247 (1986).  The
10 Court must draw all reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v.*
11 *O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 5123 U.S. 79
12 (1994).  The moving party has the burden of demonstrating the absence of a genuine issue of
13 material fact for trial.  *See Anderson,* 477 U.S. at 257.  Mere disagreement, or the bald assertion
14 that a genuine issue of material fact exists, no longer precludes the use of summary judgment.
15 *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466,
16 1468 (9th Cir. 1987).

17         Genuine factual issues are those for which the evidence is such that "a reasonable jury
18 could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts are
19 those which might affect the outcome of the suit under governing law.  *Id.*  In ruling on summary
20 judgment, a court does not weigh evidence to determine the truth of the matter, but "only
21 determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3e 547, 549
22 (9th Cir. 1994)(citing *O'Melveny & Meyers,* 969 F.2d 747).  Furthermore, conclusory or
23 speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment.
24 *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 60 F.3d 377, 345 (9th Cir. 1995).

1  Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue
2  in summary judgment motions. *Id*. at 345; *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d
3  655, 667 (9th Cir. 1980).

## UNDISPUTED RELEVANT FACTS

The Plaintiffs purchased a 2005 Monaco RV for $290,999.59 from the defendant, Great American RV, Inc., on May 21, 2005. The Plaintiffs intended to use the RV for extensive travel and to live in it as their home but, for purposes of this motion, there is no admissible evidence before the Court to support the conclusion that this purpose was stated to the seller. The evidence does show that the Plaintiffs lived full time in the motorhome for several years. They stopped making monthly payments on the RV as of July 1, 2009. At the time the motorhome was returned, it has less than 25,000 miles on it. Between June 2005 and July 2009 the plaintiffs made forty-six monthly payments of $2,029.11 for a total payment of $93,339.06 and, in addition, they put additional money down when the motorhome was purchased.

The windshield was first replaced by Great American RV between June 3 – 21, 2005, shortly after the Butlers purchased the motorhome. The second windshield replacement occurred on August 10, 2005 and this replacement was necessitated by a rock chip in the windshield. Sometime after the second time the windshield was replaced it developed another crack/stress fracture. The Butlers took the motorhome to a dealer in Wildwood, Florida and they spent 23 days there while the dealer attempted to replace the windshield. This attempt was unsuccessful as one replacement windshield arrived broken, a second was broken by the dealer and a third was broken when the dealer attempted to install it in the motorhome. The Butlers left the dealership with their original cracked windshield. As a consequence of the crack in the windshield, the motorhome also sustained water damage which was then later repaired. This cracked windshield was then replaced on July 14, 2006. The windshield again developed a crack/stress fracture and

Order Denying Motion for Revocation
of Acceptance and for Reimbursement    - 6

1  it was repaired between December 9, 2008 and December 24, 2008 at a dealership in Harrisburg,
2  Oregon.  When the motorhome was delivered back to the Butlers and while parked at their home,
3  the windshield developed another crack/stress fracture.  The Butlers then delivered the
4  motorhome to Great American RV in July 2009 and advised that they would not pick it up again.
5  According to Mr. Butler's testimony, replacement of each windshield cost in excess of $2,000
6  although he did not have to pay for the replacements as they were either replaced under warranty
7  or based on the promise of the manufacturer to "repair the windshield for the life of the coach
8  because it was a design error."  ECF No. 66-1, p. 26.
9      On two occasions, in addition to replacing the windshield, major repairs were done to the
10 "front cap, major alterations from the original design. . . . they did a fiberglass layup all the way
11 up across the front with the windshield out and they had to retrim the shape, the size of the cutout
12 in the front cap that the windshield nested in.  New seal designs, wider seal design.  I think they
13 honestly tried to fix the problem but they didn't."  ECF No. 65-2, p. 49 (Deposition of Charles
14 Butler).  It is not clear, however, from Mr. Butler's testimony when these two major repair
15 attempts actually occurred.  In addition, numerous repairs were made to the motorhome
16 regarding other issues.  All the work performed is documented in the Coach History (ECF NO.
17 65-4).
18      The Coach History documents that the motorhome was unavailable for use by the
19 Plaintiffs for a total of 128 days during which time the repair facility was working on replacing
20 the windshield as well as making other repairs.  Of the 128 days, it is probable that more than 56
21 days were related to the replacement of the windshield.  The Coach History shows that the
22 windshield was replaced, at the Wildwood, Florida facility, in just one day but the testimony
23 reflects a number of attempts to replace the windshield, all of which failed, and which clearly
24

took more than one day.  The exact number of days the motorhome was in the Florida repair facility related to attempts to replace the windshield is not known at this time.

The Coach History documents other days in which the motorhome was not available to the Plaintiffs for their use in addition to the 128 days identified by the Court.  In one document Mr. Butler identifies a total of 149 days (ECF No. 65-3) and in his deposition Mr. Butler testified that the motorhome was in for repair a total of 156 days.  (ECF No. 65-2. p. 32).

The Plaintiffs' Motion for Partial Summary Judgment contains references to work done on the motorhome which work is not documented in the Coach History.  To the extent such references occur, they are not based on admissible evidence and will not be considered by the Court.  An example of such reference is found at Paragraphs J and K (ECF No. 92, p. 6) which relate to work done in Kenly, North Carolina but these references then rely on the amended Complaint which, as noted above, is not verified.  In addition, there is no admissible evidence before the Court regarding these two instances of repair.

The Court also notes that while the Plaintiffs assert that the Defendants "made multiple and repeated assurances to Plaintiffs that Defendants could and would repair the vehicle" (ECF No. 92, p. 7), this statement is not supported by admissible evidence.  The assertions appear, once again, to rely only on claims set forth in an unverified Complaint.

The Court also notes that the argument by the Defendant, that the second, fourth and fifth window replacements were not due to a defect in the windshield is also not supported by any competent evidence.

## REVOCATION OF ACCEPTANCE

R.C.W. 62-A.608 Revocation of acceptance in whole or in part

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; . ..

. . .

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

One of the issues before the Court is whether there are facts sufficient for the Court to find, as a matter of law, that a design defect in the motorhome caused the windshields to crack which then necessitated the replacement or attempted replacement of the windshield five times over a period of four years (including the fact that the windshield was cracked again when the motorhome was returned to Great America RV) substantially impaired the value of the motorhome to the Butlers.[1]

While the Court believes the evidence strongly supports a conclusion in favor of the Butlers, there is no testimony, cited to the Court, which discusses or references how the required replacements affected the Butlers. The Court could only guess in that regard and that would not be appropriate in the context of a summary judgment motion. For instance, the Court could imagine that the Butlers were extremely frustrated with what to them was an on-going problem with a cracked windshield and they felt that this greatly compromised their confidence in the integrity of the motorhome. However, there is no testimony to that effect that has been placed before the Court.

---

[1] The Court is not including the replacement of the windshield due to the rock chip as that was not due to a defect.

The facts presented to the Court, for purposes of this motion, do support a conclusion that a design defect caused the problems with the windshield, that numerous good faith attempts were made to repair that defect and that such attempts were unsuccessful.  That, however, is not sufficient for the Court to find, as a matter of law, that the Butlers were entitled to revoke acceptance.  The Court must also find that this substantially impaired the value of the motorohome to the Butlers and the facts to support that conclusion are absent.

While the issue of "substantially impaired the value" as to Butlers does not necessarily focus on money, the Court notes that the cost to repair each windshield was in excess of $2,000 and that in several instances the time needed to replace the windshield was excessive.  In their opposition to the motion, the Defendant asserts that the "value" should only be a dollar value and they assert that they have submitted evidence that the "value of the RV was impaired by less than 2% of the original purchase price of the RV."  ECF No. 99, p. 7.  This reference is based on the report attached to the Declaration of Christina Zimmerman.  ECF No. 100.  However, that report is not admissible in evidence as it is not presented in the form of an affidavit or declaration, is not under penalty of perjury and is not being considered by the Court.  In addition, the Court notes that the report references an Exhibit A which is not attached.  It also seems to focus on "any deficiencies in need of correction before this recreational vehicle could be re-sold."  Mr. Butler testified that the main problem with the motorhome when he was turned it in was the windshield cracking again.  It appears that the deficiencies noted by the Defendant's expert are not relevant to the issue for determination by this Court as it does not address whether the defect in the windshield design "substantially impaired the value of the motorhome to the Butlers."

The Court concludes that there remain factual issues for determination at the time of trial.  The Court expects, however, that all facts in support of as well as in opposition to the claim for revocation of acceptance will be presented at the time of trial by both parties.

## TIMLINESS OF REVOCATION OF ACCEPTANCE

The next issue for resolution with regard to revocation of acceptance is whether the Butler's revocation of acceptance occurred within a reasonable time after the Butler's discovered the grounds for the revocation of acceptance. R.C.W. 62A.2-608.

The Court concludes that this presents a factual question for determination at the time of trial. While it may be that the Butlers were entitled to give every opportunity to repair the defect and that the timeliness of the revocation should be made in relation to those efforts, the Court believes that additional facts should be presented in that regard particularly in light of the fact that it appeared, for approximately two years, that the windshield problem had been resolved.

## MAGNUSON MOSS WARRANTY ACT

For many of the reasons stated above, the Court also concludes that there are factual questions regarding the applicability of the Magnuson Moss Warranty Act. Testimony needs to be presented to support the meaning of "merchantability" as it relates to the motorhome as well as whether there was an implied warranty of fitness for a particular purpose.

## CONCLUSION

For the above stated reasons, the Plaintiffs Motion for Partial Summary Judgment on the Issue of Rescission is DENIED. ECF No. 92.

In light of the fact that the Motion for Rescission has been denied, the Plaintiffs' Motion for Partial Summary Judgment on the Issue of Reimbursement (ECF No. 93) is also DENIED.

The Court is also denying the Defendant's request for sanctions for the mere bringing of the motion. The fact that the Court denied the Defendant's motion does not, in and of itself, mean that the Plaintiff's motion was not warranted.

1  DATED this 9th May, 2011.

2

3                                            Karen L. Strombom

4                                            United States Magistrate Judge

Order Denying Motion for Revocation
of Acceptance and for Reimbursement         -
12